■ NORA A. DWYER, Appellant, v MATTHEW TRACEY et al., Respondents. — Appeal from an order of the Supreme Court at Special Term (Hughes, J.), entered November 18, 1983 in Rensselaer County, which granted defendants' motion for summary judgment dismissing the complaint.

Plaintiff commenced this action on August 18, 1981 to recover damages for personal injuries allegedly sustained on August 30, 1979, when her automobile was struck from behind by an automobile owned by defendant John Tracey and operated by defendant Matthew Tracey. After issue was joined, Special Term granted defendants' motion for summary judgment on the ground that plaintiff had not sustained a "serious injury" as defined in subdivision 4 of section 671 of the Insurance Law. This appeal ensued.

Upon a contested motion for summary judgment, the court must determine in the first instance, as a matter of law, whether plaintiff has made a prima facie showing of a "serious injury" (*Licari v Elliott,* 57 NY2d 230). Here, plaintiff relies on two of the categories of serious injury listed in subdivision 4 of section 671 of the Insurance Law, specifically "permanent loss of use of a body organ, member, function or system" and "permanent consequential limitation of use of a body organ or member". The record reveals that plaintiff received emergency room treatment for complaints of head and neck pains on the night of the accident. X rays of her neck and back were negative for fractures. She was diagnosed as having a cervical muscle strain, instructed to wear a cervical collar, given a prescription for pain medication and released. She missed three days of work and curtailed certain of her recreational activities. Thereafter, she was treated on three separate occasions during October, 1979 by Dr. Alfred A. Frankel for cervical whiplash and was released as asymptomatic. On August 14, 1980, plaintiff was involved in a second automobile accident in which she again sustained neck injuries. Thereafter, plaintiff was examined by Dr. David Green and Dr. Stanley Ball, who both indicated that she was imagining her headaches. A third examining physician, Dr. James

Furlong, rendered medical reports of plaintiff's condition on September 22, 1982, March 21, 1983 and July 24, 1983. In the initial report, Dr. Furlong indicated the injury would slowly resolve but, in the event plaintiff's neck symptoms persisted, she would "be left with a mild, *permanent,* partial disability" (emphasis added). It appears plaintiff reinjured her neck in January, 1983 while shoveling snow. In his second report, Dr. Furlong determined this new injury had resolved, but repeated his initial diagnosis and attributed causation to the *August, 1980* automobile accident. In his final report, Dr. Furlong clarified his previous analysis of chronic posterior cervical muscle strain by attributing causation to both automobile accidents. In opposition to the motion for summary judgment, plaintiff submitted her personal affidavit reiterating the history outlined above, and attesting to the persistence of her injuries and limitation of activities. She characterized her injury as "a pulling sensation, stiffness and pain of her neck and trapezius muscle area on neck rotation, particularly during the course of her employment". The reports of Dr. Furlong, in depositional form, were also submitted by plaintiff.

Having reviewed the record, we conclude that plaintiff failed to establish by competent medical proof a "permanent loss" or "permanent consequential limitation of use of a body organ or member". We recognize that " 'permanent loss' " does not necessitate proof of a total loss of the " 'organ, member, function [or] system' ", but only proof that it " 'operates in some limited way, or operates only with pain' " (*Mooney v Ovitt,* 100 AD2d 702, 703). Some degree of permanency and causation must be demonstrated (*Bugge v Sweet,* 90 AD2d 858, affd 61 NY2d 710). Although permanent pain, even of an intermittent character, may form the basis of a "serious injury" (*Mooney v Ovitt, supra*), subjective complaints unsupported by credible medical evidence do not suffice (*Jones v Sharpe,* 99 AD2d 859, affd 63 NY2d 645; *Lopez v Santore,* 97 AD2d 787, app dsmd 61 NY2d 758; *Salisbury v St. Louis,* 91 AD2d 745). Here, plaintiff attests to continued intermittent pain curtailing certain of her activities, but the medical evidence in support of these contentions is tenuous at best. We particularly note that Dr. Furlong's diagnosis is questionable as to both permanency and causation. He did not examine plaintiff until after the second automobile accident. Moreover, his diagnosis of a "mild, permanent, partial disability" is obviously premised on plaintiff's subjective complaints. This analysis is essentially an exercise in speculation and does not rise to the level of credible medical evidence required to support plaintiff's claim of permanency occasioned by the August, 1979 accident (see *Jones v Sharpe, supra; De Filippo v*

*White,* 101 AD2d 801, 802; but cf. *Savage v Delacruz,* 100 AD2d 707). Nor do we find evidence to substantiate a permanent "consequential" loss, which term is used "in the sense of 'important' or 'significant'" (1 NY PJI2d 101 [Supp]). Dr. Furlong diagnosed only a mild injury, which plainly has not prevented plaintiff from continuing her daily activities (see *Nolan v Ford,* 100 AD2d 579, 580).

Finally, we reject plaintiff's contention that defendants failed to submit sufficient evidentiary proof in support of their motion for summary judgment (see *La Frenire v Capital Dist. Transp. Auth.,* 96 AD2d 664, 665; *Savage v Delacruz, supra,* p 708). Although the attorney's affidavit and unsworn medical reports were clearly inadequate, plaintiff's sworn testimony from the examination before trial as well as the sworn reports of Dr. Furlong serve to alleviate that deficiency.

Order affirmed, with costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.